UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY MUTUAL FIRE INSURANCE COMPANY; LIBERTY MUTUAL PERSONAL INSURANCE COMPANY; AMERICAN ECONOMY INSURANCE COMPANY; SAFECO INSURANCE COMPANY OF ILLINOIS; and LM GENERAL INSURANCE COMPANY, | C.A. No. _____ |
| Plaintiffs, | **Demand for Jury Trial** |
| v. | |
| QUICK CARE MEDICAL DEVICES, LLC; ADVANCED RECOVERY SPECIALISTS LLC; NICK SCHWARZROCK; and DOUG JONES, | |
| Defendants. | |

## **COMPLAINT**

Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, American Economy Insurance Company, Safeco Insurance Company of Illinois, and LM General Insurance Company (hereinafter collectively referred to as "Liberty Mutual" and/or "plaintiffs") hereby allege as follows.

1

I.    **INTRODUCTION**

1.    This is a case about durable medical equipment ("DME") and medication suppliers, and the owners, managers, agents, and representatives of the same, who engaged in a scheme to defraud Liberty Mutual by submitting and causing to be submitted false and fraudulent records, bills, and invoices through the U.S. Mail seeking to collect payment from Liberty Mutual for DME, medications, and related services that were not actually provided, unlawful, unlicensed, medically unnecessary, and charged at excessive rates pursuant to applicable statutes and regulations, including the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*.

2.    The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in payments from Liberty Mutual to the defendants pursuant to Michigan's No-Fault Act.

3.    All of the acts and omissions of the defendants, described throughout this Complaint, were undertaken intentionally.

4.    By this Complaint, and as detailed in each count set out below, Liberty Mutual brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust

enrichment.  Liberty Mutual also seeks declaratory relief that no previously-denied and pending claims submitted to it by the defendants are compensable.

## II.   THE PARTIES

### A.   PLAINTIFFS

5.   Liberty Mutual Insurance Company is a company duly organized and existing under the laws of the Commonwealth of Massachusetts.

6.   Liberty Mutual Fire Insurance Company is a company duly organized and existing under the laws of the State of Wisconsin.

7.   Liberty Mutual Personal Insurance Company is a company duly organized and existing under the laws of the Commonwealth of Massachusetts.

8.   American Economy Insurance Company is a company duly organized and existing under the laws of the State of Indiana.

9.   Safeco Insurance Company of Illinois is a company duly organized and existing under the laws of the State of Illinois

10.   LM General Insurance Company is a company duly organized and existing under the laws of the State of Illinois.

11.   Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, American Economy Insurance Company, Safeco Insurance Company of Illinois, and LM General

Insurance Company each have their respective principal places of business in Boston, Massachusetts.

10.    At all times relevant to the allegations contained in this Complaint, the plaintiffs were authorized to conduct business in the State of Michigan.

B.    **DEFENDANTS**

   1. **Quick Care Medical Devices LLC**

12.    Defendant Quick Care Medical Devices, LLC ("Quick Care") is organized under the laws of the State of Delaware.

13.    Upon information and belief, Quick Care's members are defendants Nick Schwarzrock ("Schwarzrock") and Doug Jones ("Jones").

14.    Schwarzrock is a citizen of the State of Minnesota and Jones is a citizen of the State of Michigan.

15.    At all times, Quick Care was operated and conducted by defendants Advanced Recovery, Schwarzrock, and Jones.

16.    Quick Care billed Liberty Mutual for DME, medications, and services that were not provided, unlawful, unlicensed, medically unnecessary, and charged at excessive rates in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 1.

### 2. **Advanced Recovery Specialists LLC**

17.    Defendant Advanced Recovery Specialists LLC ("Advanced Recovery") was originally organized under the laws of the State of Michigan and was converted on August 17, 2021 to a foreign limited liability company organized under the laws of the State of Delaware.

18.    Upon information and belief, Advanced Recovery's members are Schwarzrock, who is a citizen of the State of Minnesota, and Jones, who is a citizen of the State of Michigan.

19.    At all relevant times, Advanced Recovery was operated and conducted by defendants Quick Care, Schwarzrock, and Jones.

20.    Advanced Recovery billed Liberty Mutual for DME, medications, and services that were not provided, unlawful, unlicensed, medically unnecessary, and charged at excessive rates in relation to several Liberty Mutual insureds, including the patients set out in Exhibit 2.

### 3. **Nick Schwarzrock**

21.    Defendant Nick Schwarzrock is a resident and citizen of the State of Minnesota.

22.    At all relevant times, Schwarzrock operated and conducted defendants Quick Care and Advanced Recovery.

### 4. **Doug Jones**

23.    Defendant Doug Jones is a resident and citizen of the State of Michigan.

24.    At all relevant times, Jones operated and conducted defendants Quick Care and Advanced Recovery.

## III.    **JURISDICTION AND VENUE**

25.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961, *et seq*., because they arise under the laws of the United States.

26.    Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000 against each defendant and because it is between citizens of different states.

27.    Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

28.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts at issue in this Complaint were carried out within the Eastern District of Michigan.

## IV.    **THE DEFENDANTS' FRAUDULENT SCHEME**

29.    The defendants used Quick Care and Advanced Recovery to submit exorbitant charges to Liberty Mutual for purported DME, medications, and services

that were not provided, were not prescribed, were unlawful, were medically unnecessary, and were billed at excessive rates.

30.    The majority of the DME issued by the defendants is unproven and experimental, and the medications dispensed by the defendants can be obtained from any pharmacy (if necessary) for a fraction of the price charged by the defendants.

31.    In order to induce physicians to direct patients to them, the defendants entered into contracts with physicians that they referred to as "managed services agreements."

32.    These contracts between the defendants and prescribing physicians were merely a (poor) cover for paying kickbacks in exchange for prescriptions.

33.    These kickbacks offered and paid by the defendants to prescribing physicians were at the root of the categories of fraud described in detail below, including providing the motivation for preparing and submitting forged prescription forms and for writing prescriptions for excessive and medically unnecessary DME, medications, and services.

34.    Quick Care is operated and controlled by several former employees and associates of another company called Caerus Corp. ("Caerus").

35.    Defendant Schwarzrock was formerly an executive at Caerus and, during that period, Schwarzrock worked with defendant Jones who acted as a broker to arrange kickback deals for Caerus with physicians in Michigan.

36.    Caerus, acting through Schwarzrock and Jones, induced physicians –
particularly in Michigan where unlimited No-Fault benefits were available – to
prescribe certain equipment through the payment of kickbacks.

37.    Upon information and belief, the "managed services agreements" used
by Quick Care and Advanced Recovery are the same or similar to those used by
Caerus.

38.    Both physicians who contracted with Caerus and Caerus itself have
confirmed that prescribers were simply paid for prescribing DME through these
"managed services agreements."

39.    Evidence discussed below that the Quick Care and Advanced Recovery
agreements were shams includes that prescription forms were conveyed to Quick
Care and Advanced Recovery and DME and medications were sent through the mail
to patients; there was no component of this arrangement whereby Quick Care or
Advanced Recovery managed any part of the prescribing physicians' practices.

40.    Indeed, the only apparent difference with the scheme used by the
defendants is that they no longer sell the specific equipment that is controlled by
Caerus and instead sell products that they refer to as "photobiomodulation" therapy.

41.    Other sellers of the same devices call them "light therapy," and still
others simply call them heating pads.

42.    Quick Care and Advanced Recovery also issue medically unnecessary cold compression devices and illegally practice pharmacy by dispensing medications without the necessary licensure.

43.    In order to maximize the sales of these medically unnecessary devices that most physicians would not prescribe due to their lack of proven utility, Quick Care and Advanced Recovery submitted forged physician prescriptions and order forms to falsely support the bills submitted to insurers like Liberty Mutual.

44.    All of the prescription orders for the devices billed by Quick Care, including those orders that included forged physicians' signatures as discussed *infra*, bear Advanced Recovery's name and logo, evidencing the defendants' collusion and participation in each other's fraud.

45.    The scheme summarized above, and the specific acts of fraud explained and exemplified below, were all intended to bill Liberty Mutual as much as possible for medically unnecessary DME, medications, and services that were never compensable under Michigan's No-Fault Act.

## V.    BILLING BASED ON FORGED PRESCRIPTIONS AND FABRICATED ORDERS

46.    The defendants routinely billed Liberty Mutual for DME, medications, and services that were never actually prescribed to patients.

47.   To that end, the defendants simply submitted forged physicians' signatures on their order forms to create the appearance of legitimacy and to falsely support their bills to Liberty Mutual.

48.   DME and medication that is not supported by a legitimate prescription is unlawful and cannot be considered medically necessary.

49.   The light therapy heating pads billed by Quick Care are branded as "On Lux Light Therapy."

50.   Although there is no record of the FDA approving this specific branded device, similar devices have received FDA marketing approval for use by prescription only.

51.   Quick Care and Advanced Recovery created prescription forms for their devices to create the appearance that they are a legitimate treatment and to attempt to justify the ridiculous amounts charged.

52.   The forged prescription forms submitted by Quick Care and Advanced Recovery are confirmed as fraudulent by doctors in Michigan who reported that their signatures were forged and that they never ordered the products for which the defendants billed Liberty Mutual.

53.   For example, Pedro O. Toweh, M.D. ("Toweh"), a physician with Select Medical Group of Michigan, LLC ("Select Medical"), signed an affidavit on January 16, 2023 certifying that prescription forms for intermittent cold compression

therapy devices produced in litigation by Advanced Recovery had his signature forged.

54.    Toweh confirmed that he did not recognize the signatures alleged to be his on the DME orders and he never had knowledge or gave his consent for prescriptions for these devices.

55.    Moreover, Toweh stated in a letter to Advanced Recovery that he has "never heard of your companies [and] I do not know of your products or services . . . ."

56.    Toweh was the most frequently reported prescriber of DME billed by the defendants to Liberty Mutual.

57.    As just one example of bills by the defendants based on forged and fabricated orders from Toweh, Quick Care presented a series of prescription documents bearing Toweh's forged signature to falsely support bills to Liberty Mutual of more than $24,000 for renting an intermittent cold compression therapy device to patient D.J. (Claim No. 048974667)[1] over three (3) months between May 16, 2022 and August 29, 2022.

---

[1] To protect the privacy of the patients at issue herein, Liberty Mutual refers to them by initials and Liberty Mutual claim number. As the defendants only submit bills to Liberty Mutual using the Liberty Mutual claim number, they are aware of these patients and can identify them by the information provided herein.

58.     At no point during D.J.'s treatment at Select Medical or any other clinic was this device prescribed or even mentioned.

59.     In fact, Select Medical's treatment notes from June 8, 2022 confirm D.J. was not using a cold compression device or any other item of DME, indicating that not only was the prescription forged, but also that the DME was never even actually provided to D.J.:

```
Medical Equipment currently being used:
[ ] Cane;
[ ] Walker;
[ ] Wheelchair;
[ ] Back brace;
[ ] Neck brace
[ ] Wrist brace; [ ]RT [ ]LT [ ]BIL
[ ] Knee brace; [ ]RT [ ]LT [ ]B/L
[ ] Ankle Brace; [ ]RT [ ]LT [ ]BIL
[ ] TENS Unit;
[ ] Cold Compression
[ ] Other;
```

60.     D.J. also stated during that visit that he felt better and had "no back pain."

61.     Nevertheless, Quick Care continued to bill Liberty Mutual for this device, at a rate of $200 per day, for another ten (10) weeks.

62.     Not only did Quick Care forge Toweh's signature, but it also copied the forged signature between prescriptions.

63.     Routinely, Quick Care copied signatures on otherwise blank forms to create the appearance that physicians ordered DME (or topical medications) for more than one body part, as in the examples below relative to C.I. (Claim No. 039109683).

64.     As depicted below, the signature, printed name, NPI number, and address of Toweh are all copied; the only difference is the different body part checked:



65.     The physician who was claimed by Quick Care to have written the second most prescriptions for the patients billed to Liberty Mutual was Aman Upadhyay, M.D. ("Upadhyay").

66.     This physician's signature was also copied and pasted onto blank prescription forms by Quick Care.

67.     The practice described above of using a copied signature to create the appearance that items were ordered for more than one body part was also used with Upadhyay's purported signature, as exemplified by the following alleged order for On Lux devices for D.J. (Claim No. 023641546):



68.     As in the examples above, the only changes are the body part box checked.   The signature and all other information were copied between forms, evidencing that Upadhyay did not actually individually sign these orders.

69.    Upadhyay's "signature" (which is far different in appearance from the example above) was also copied and pasted between forms purporting to order LidoPro patches and cream for different body parts on the same date:



70.    Other evidence with respect to D.J. confirms that these devices and medications were not actually ordered.

71.    First, the "prescriptions" are dated April 15, 2022, but Quick Care did not bill for allegedly issuing the DME and medications to D.J. until almost two (2) months later on June 8, 2022.

72.    To the extent that there was any explanation given for the orders, it was that the items were necessary to reduce swelling at a surgical site.

73.    The only surgery was implementation of a pain pump in D.J.'s lumbar spine; there was no surgery to the neck.

74.    Further, Upadhyay's actual record notes only the intent to order patches for D.J.'s lower back and does not mention the order or use of cream or anything to be used on D.J.'s neck, which again was not subject to a surgical procedure and in fact was not addressed by Upahdyay's alleged evaluations and treatment at all.

75.    The same version of Upahdyay's "signature" was also used for different patients.  The "signature" on the DME form for D.J. above is the same signature that was copied onto the form submitted relative to I.A. (Claim No. 044449655) for the alleged order of light therapy heating pad DME:



76.    Upadhyay billed for repeated evaluations of I.A. during which he reported on I.A.'s alleged use of other items of DME and of medications, but never

mentioned the prescription or use of anything resembling this DME billed by Quick Care based on a clearly copied and forged prescription form.

77.    Quick Care also used pre-printed forms (along with copied and forged signatures) to bill for medications that were not actually ordered.

78.    For example, the form below clearly indicates that to the extent Upadhyay intended to order anything for I.A. (Claim No. 044449655), it was only LidoPro ointment with no refills:



79.    Because Quick Care had pre-printed "4" onto the refill lines for both LidoPro ointment and patches, it used this form to submit bills for both ointment and patches and for refills that Upadhyay did not actually order.

80.    Liberty Mutual is not required to pay for DME, medications, or other services that were billed based upon forged physician prescriptions or for items that were never actually ordered for patients and is entitled to a return of the money it paid to the defendants as a result of their fraudulent submissions.

## VI.    <u>BILLING FOR SERVICES NOT RENDERED</u>

81.    The defendants regularly submitted bills to Liberty Mutual seeking payment for DME, medications, and services that were not provided to the patients at issue herein.

82.    When Quick Care forged physician signatures and fabricated prescription forms, contemporaneous records from those physicians confirm that the items billed were not being used and likely were not provided at all.

83.    In other instances, the bills submitted by Quick Care themselves evidence charges for items not provided.

84.    The defendants' conduct in mailing demands for payment for DME, medications, and services that were not rendered is indicative of their goal to submit as many bills for payment as possible regardless of whether the treatment was actually rendered and whether it was medically necessary (discussed in detail *infra*).

85.    For example, Quick Care claims to have (illegally, as discussed below) dispensed more than $43,700 worth of drugs and devices to D.J. (Claim No. 023641546) on June 8, 2022.

86.    Quick Care submitted at least two (2) separate versions of bills for items allegedly dispensed on this date that represent that different amounts were dispensed to the patient.

87.     One version of the bill submitted by Quick Care claims that four (4) units of LidoPro patches and six (6) units of LidoPro cream were dispensed to the patient, and another version claims that just three (3) units of LidoPro patches and three (3) units of LidoPro cream were dispensed.

88.     This difference is significant, as Quick Care charged an absurd $4,320 per unit for the patches and $1,943 per unit for the cream.

89.     Quick Care also claims to have provided education and management services for an additional $350, which were not actually done and the items allegedly given to D.J. all came with written instructions for use.

90.     Quick Care also billed an additional $250 for additional supplies used during a public health emergency, but no additional supplies were used at all in simply delivering medications and DME.

91.     The final charge from Quick Care was an additional $250 for delivery and set up, but nothing purportedly given to D.J. was actually set up.

92.     Quick Care also billed for delivery/setup charges and patient education it never provided even when it only (unlawfully) billed for LidoPro patches and creams.

93.     For example, Quick Care billed Liberty Mutual for delivery/setup charges and patient education it never rendered to G.B. (Claim No. 050211620)

relative to $14,471.76 worth of LidoPro patches and cream allegedly provided on October 7, 2022.

94.     LidoPro patches and creams are not DME and require no setup and the instructions for their use is located on the packaging itself such that no "patient education" could be required:



95.     Moreover, the items for which Quick Care billed were sent via FedEx directly to G.B.'s home and Quick Care did not actually deliver these products:

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | RB▇ | Delivery Location: | 717 HIGHWAY 89 S |
| Service type: | FedEx Home Delivery | | |
| Special Handling: | Adult Signature Required | | McKee, KY, 40447 |
| | | Delivery date: | Oct 7, 2022 10:06 |

96.     In another example, Quick Care used forged and copied prescription forms from Toweh to bill for multiple units of DME allegedly issued to C.I. (Claim No. 039109683), including both light therapy heating pads and cold compression units.

97.    Quick Care submitted one record relative to C.I. claiming to have issued a cold compression unit called a Polar Care Wave manufactured by a company called Breg and a separate record for a cold compression unit called Nice1 manufactured by an entirely different company.

98.    When Advanced Recovery billed for allegedly delivering DME, it also added charges to bills for services it did not perform.

99.    Advanced Recovery routinely billed Liberty Mutual using Healthcare Common Procedure Coding System ("HCPCS") code S9381, which is an add-on charge for deliveries made to high-risk areas, in addition to billing for delivery using HCPCS code A9901.

100.    For example, Advanced Recovery billed Liberty Mutual these two (2) additional charges for alleged delivery of an On Lux device to R.D. (Claim No. 051246048) on February 18, 2023.

101.    It is utterly unclear what character of the neighborhood to which Advanced Recovery claimed to deliver DME made the neighborhood high-risk, but any subjective discomfort from entering an economically depressed area of the city does not permit Advanced Recovery to bill hundreds of extra dollars to Liberty Mutual.

102.    The DME and "high risk" delivery charges billed for R.D. and for other patients for whom Advanced Recovery billed these charges were for products

allegedly delivered to Southfield, MI, which is a suburban community that does not pose additional risks to a delivery person apart from other metropolitan area suburbs.

103.   Further, the description of HCPCS code S9381 provides that it is only to be billed when the delivery "require[s] escort or extra protection."

104.   No such protection was required and none was actually used relative to R.D. or any other patient at issue herein.

105.   All of the bills submitted by the defendants to Liberty Mutual through the U.S. Mail seeking payment for DME, medications, and services that were never provided are fraudulent.

106.   Liberty Mutual is not required to pay the defendants for DME, medications, and services that were never provided to the patients at issue in this Complaint and is entitled to recover any payments tendered to the defendants as a result of their fraudulent billing for DME and medications not provided and services not rendered.

## VII.    BILLING FOR UNLICENSED SERVICES

107.   The defendants violated several Michigan laws and regulations in their effort to bill Liberty Mutual for as much DME, medications, and other services as possible.

108.   In order to legally issue DME or dispense medications in Michigan, a provider must obtain a license from the Michigan Board of Pharmacy.

109.   A license from the Michigan Board of Pharmacy is required for all "drugs and devices manufactured, distributed, prescribed, dispensed, administered, or issued in this state . . . ."  Mich. Comp. Laws § 333.17722.

110.   Neither Quick Care nor Advanced Recovery have ever possessed any such licensing in the State of Michigan.

111.   Devices similar to the light therapy heating pad billed by the defendants require physician prescriptions, and the defendants' scheme involved the use of physician prescription forms in order to create the appearance that the DME constitutes a valid and clinically useful treatment.

112.   The cold compression devices allegedly issued by Quick Care clearly and expressly require physician prescriptions for use.

113.   Quick Care has also expressly represented to Liberty Mutual that it acts as a pharmacy with respect to the medications it dispenses, claiming in correspondence that "Quick Care Medical, LLC only dispenses topical anesthetic under the direction and direct request of physicians."

114.   Quick Care also billed for its purported dispensing of medications using Current Procedural Terminology ("CPT") code 99070, which describes materials and supplies used by a physician in non-surgical procedures.

115.   Liberty Mutual is not required to pay for DME or medications unlawfully dispensed (if at all) without the requisite licensure and is entitled to a

return of the money it paid to the defendants as a result of their fraudulent submissions.

## VIII.   UNREASONABLE      AND      UNNECESSARY      FRAUDULENT TREATMENT

116.   The defendants' willingness to bill Liberty Mutual for DME, medications, and services that were never rendered and that were based on false and forged documents demonstrates their willingness to also bill for DME and medications that they knew were unreasonable and unnecessary.

117.   The defendants' goal was to bill for as much treatment as possible, regardless of whether such treatment was reasonably necessary to patients' care, recovery, or rehabilitation.

118.   As demonstrated below, to maximize their financial gain, the defendants indiscriminately billed for DME, medications, and services in violation of standards of care, as the vast majority of their DME, medications, and services was not medically indicated, was issued (if at all) months after the acute stage of any alleged injuries, and was prescribed for excessive periods of time.

119.   The full extent of the defendants' misrepresentations regarding the lawfulness and necessity of the DME, medications, and services they allegedly provided was not known to Liberty Mutual until it undertook the investigation that culminated in the filing of this action.

120.   The unnecessary DME, medications, and services billed by the defendants, discussed more fully below, include the DME, medications, and services allegedly provided to the patients set out in the charts annexed hereto at Exhibits 1 and 2.

121.   All of the claims submitted by the defendants to Liberty Mutual through the U.S. Mail seeking payment for unnecessary, excessive, unlawful, and unreasonable DME, medications, and services are fraudulent.

122.   None of the above facts were known to Liberty Mutual until it undertook its investigation that resulted in the commencement of this action, and are not evident within the four corners of the medical records and bills submitted to Liberty Mutual by the defendants.

123.   As discussed in detail *supra*, Quick Care and Advanced Recovery routinely used copied and forged signatures to purportedly issue DME and medications for body parts that were not even being evaluated or treated.

124.   In some cases, the defendants did not even bother to forge the physician's signature leaving the signature line and date of prescription blank.

125.   Patient Y.B. (Claim No. 038512937) was one such patient where the defendants used an unsigned and undated prescription form to falsely support the medically unnecessary DME billed by Quick Care:

| Prescriber Signature: | | Date: |
|---|---|---|
| Prescriber Printed Name: Kevin T. Crawford, DO | | NPI: 1851388177 |
| Address: | | |
| City: | State: | Zip: |

P:248.499.0705 | F:248.437.9442 | E:sales@advancedrecover.com

126.   Although Advanced Recovery's prescription form purports that Kevin T. Crawford, D.O. ("Crawford") ordered a cold compression therapy device for Y.B.'s knee for a duration of 120 days, Crawford never signed or dated this form before Quick Care billed Liberty Mutual $6,000 for its rental to Y.B. on January 24, 2021.

127.   Crawford never mentioned the cold compression device in any of his treatment notes for Y.B. for any of her alleged visits between January 2021 and April 2021, nor is it mentioned in any of her physical therapist's records during the same time period, all of which evidence that it was not being used by Y.B.

128.   Nevertheless, Quick Care continued to bill for this device for three (3) more months on February 23, 2021, March 25, 2021, and April 24, 2021.

129.   Even when it appeared that providers actually ordered the On Lux heating pad devices billed by Quick Care and Advanced Recovery, they were entirely unnecessary for their patients' alleged injuries.

130.   This is evidenced by the fact that once these DME devices were allegedly prescribed, no reevaluations were conducted to determine whether the device was working or whether the patient was even using it.

131.   In most cases, the items for which the defendants billed were never mentioned at all after they were allegedly issued.

132.   For example, Advanced Recovery billed for two (2) On Lux devices allegedly issued to R.D. (Claim No. 051246048) for her cervical and lumbar spines on February 18, 2023.

133.   R.D.'s physician, Casey Darrah, M.D. ("Darrah"), stated prior to ordering these devices on February 7, 2023 that the "patient will return to us in four weeks for reevaluation."

134.   The On Lux device was not mentioned at all during R.D.'s next appointment with Darrah on March 2, 2023, and was never mentioned at all in any subsequent visit with Darrah or by any of her other providers at any time, making it clear its only purpose was to maximize billing and not for medical necessity.

135.   In another example, R.A. (Claim No. 051458295) was allegedly involved in a motor vehicle accident on November 4, 2022.

136.   All of R.A.'s diagnostic imaging at the emergency department on the date of the alleged accident was negative for acute injury and R.A. was diagnosed with only a neck strain.

137.   Three (3) days later on November 7, 2022, R.A. was purportedly examined by Gargiben Patel, FNP-C ("Patel"), who allegedly prescribed cervical and lumbar On Lux devices billed by Advanced Recovery on November 26, 2022.

138.   On the same date that Patel allegedly prescribed the On Lux devices, he also ordered heating pads, a digital TENS unit, a lumbar orthosis, and a cervical pillow billed by a different DME provider.

139.   Accordingly, Liberty Mutual was billed for six (6) different items of DME allegedly prescribed by the same medical provider for R.A.'s alleged minor strain injuries, the bulk of which were billed by Advanced Recovery.

140.   In addition to being redundant to the heating pad, the On Lux devices billed by Advanced Recovery were never mentioned in any follow up visit with Patel's office, or in any of R.A.'s physical therapy records, confirming their only purpose was to maximize billing to Liberty Mutual.

141.   Moreover, because Quick Care also billed for medication refills not actually ordered or needed (as described *supra*), there were also unfounded representations about necessity tied to procedures.

142.   For example, it was claimed that I.A. (Claim No. 044449655) needed refills of LidoPro ointment due to pain around surgical incisions as far as ten (10) months after the date of the alleged surgery, when the incisions clearly were already healed.

143.    Liberty Mutual is not required to pay for DME, medications, or other services that are not medically necessary and is entitled to restitution of the money it paid for these fraudulent charges.

## IX.    EXCESSIVE, UNREASONABLE, AND UNCUSTOMARY CHARGES

144.    In addition to submitting bills for DME, medications, and services that were unlawful, unlicensed, medically unnecessary, and issued (if at all) based on forged physician's orders, as detailed *supra*, the DME, medications, and services billed by the defendants were charged at outrageous prices many times higher than the actual cost of these items/services.

145.    One of the primary methods employed by the defendants to overcharge insurers like Liberty Mutual was to generate excessive charges by "renting" cold compression devices that would been far less expensive for the patient to purchase.

146.    For the vast majority of patients, Quick Care billed $3,000 for "renting" cold compression devices in increments of fifteen (15) days.

147.    Since rentals were nearly always unnecessarily extended for three (3) months, Quick Care routinely charged at least $18,000 per patient for this device.

148.    This same cold compression device can be purchased online for less than $150, meaning Quick Care generated more than 100 times the sales price by renting the device:



**Breg Inc Vpulse Thermal And Compression Pads - VPULSE Compression Therapy Kit Each**

$146.99   Grayline Medical

[ Visit site ]

Product details

Product Information: VPULSE Compression Therapy Kit with Shoulder PadsManufacturer Part # C00004Description Improves patient outcomes of orthopedic episodes, increasing patient satisfaction and reducing costs Helps reduce operative site discomfort and inflammation Reduces risk of venous thromboemb... +

149.   As one example, Quick Care charged Liberty Mutual $24,000 for patient D.J. (Claim No. 048974667) to "rent" a cold compression device that can be purchased outright online or over-the-counter at a fraction of that cost.

150.   By billing Liberty Mutual for DME that it charged at more than 100 times its publicly available price, Quick Care's charges cannot be considered reasonable and unreasonable charges and, thus, are not compensable under the No-Fault Act.

151.   Quick Care also billed Liberty Mutual for medications at rates that were excessive and unreasonable.

152.   Each time Quick Care billed Liberty Mutual for a thirty (30) day supply of LidoPro patches, it billed the outrageous sum of $2,880 and it charged $971.96 for a four (4) ounce tube of LidoPro cream.

153.   LidoPro brand patches can be purchased for less than $150 for an equivalent supply.

154.   Further, as LidoPro is simply a non-prescription patch containing lidocaine and menthol, similar generic brand products can be purchased at retail for less than $20.

155.   A four (4) ounce tube of LidoPro cream identical to that which was billed by Quick Care can be purchased over-the-counter for approximately $22.

156.   The amounts of the defendants' charges had no relationship to the cost or value of the equipment, medications, and services allegedly provided, and they were selected only to maximize the amount of charges to Liberty Mutual.

157.   Unreasonable charges are not compensable under the No-Fault Act and Liberty Mutual has no obligation to pay the defendants the outrageous amounts billed.

## X.   MISREPRESENTATIONS MADE BY THE DEFENDANTS AND RELIED ON BY LIBERTY MUTUAL

### A.   MISREPRESENTATIONS BY THE DEFENDANTS

158.   To induce Liberty Mutual to pay promptly their fraudulent charges, the defendants submitted and caused to be submitted to Liberty Mutual false documentation that materially misrepresented that the DME, medications, and services they billed were necessary within the meaning of the Michigan No-Fault Act, that the charges for the same were reasonable, and that all DME, medications, and services were lawfully and actually rendered.

31

159.    Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

160.    Moreover, claims for medical benefits under Michigan's No-Fault Act can only be made for goods or services that are "lawfully render[ed]." Mich. Comp. Laws § 500.3157(1).

161.    Thus, every time the defendants submitted bills and medical records to Liberty Mutual supporting their claims for No-Fault benefits, the defendants necessarily warranted that such bills and records related to lawfully and actually rendered and necessary treatment for their patients' care, recovery, or rehabilitation.

162.    There are no less than six (6) separate reasons why the defendants' alleged treatment was not in fact performed, was not lawful, was not medically necessary, and was fraudulently billed to Liberty Mutual.  The defendants:

a.    Billed for DME, medications, and services that was not prescribed by a physician;

b.    Forged and falsified records to create the appearance that DME, medications, and services had been validly prescribed when they were not;

c.    Billed for DME, medications, and services that were never provided at all;

d.    Billed for issuing DME and dispensing medications that they were not licensed to issue or dispense in Michigan;

e.    Billed for DME and medications that were not medically necessary; and

f.    Charged unreasonable and excessive amounts for the DME and medications they claim to have issued and dispensed.

163.   As detailed *supra*, the defendants frequently violated standards of care, billed excessively, and billed for DME, medications, and services without basis or adequate substantiation.

164.   If DME, medications, and services were not required for a patient's care, recovery, or rehabilitation, such DME, medications, and services were not medically necessary.

165.   The foregoing facts – billing for DME, medications, and services not prescribed by a physician; billing based on forged prescription orders; and billing for unnecessary products – were not, and could not have been, known to Liberty Mutual until it commenced its investigation of the defendants shortly before the filing of this action.

166.   Taken as a whole, the prevalence of such facts and the defendants' failure to abide by accepted standards of care render the defendants' charges unnecessary and unlawful.

167.   The fact of unnecessary and unlawful claims is present with respect to every patient at issue in this Complaint, including those specific patient examples set out above and in the charts annexed at Exhibits 1 and 2.

168. Thus, each claim for payment (and accompanying medical records) under Michigan's No-Fault Act mailed to Liberty Mutual by, on behalf of, or with the knowledge of the defendants constitutes a misrepresentation because the DME, medications, and ancillary services were not lawful and medically necessary, as they must be in order to be compensable under Michigan law.

169. Through the submission of patient records, invoices, and other medical documentation to Liberty Mutual via the U.S. Mail, the defendants attested to the fact, lawfulness, and medical necessity of the DME, medications, and services for which they billed Liberty Mutual.

170. As the defendants did not provide actual, lawful, and reasonably necessary DME, medications, and services, and misrepresented the DME, medications, and services actually delivered, each bill and accompanying documentation mailed by the defendants to Liberty Mutual constitutes a material misrepresentation.

## B.    LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE

171. The facially valid documents submitted to Liberty Mutual by the defendants were designed to, and did in fact, induce Liberty Mutual to rely on the documents.

172. At all relevant times, the defendants hid from Liberty Mutual facts regarding the delivery, lawfulness, and medical necessity of the DME, medications,

and services allegedly provided to prevent Liberty Mutual from discovering that the claims submitted by and on behalf of the defendants were not compensable under the No-Fault Act.

173. These misrepresentations included submitting false medical documentation regarding the fact, lawfulness, and necessity of DME, medications, and services in order to seek payment under Michigan's No-Fault Act.

174. Due to the defendants' material misrepresentations and other affirmative acts designed to hide their fraudulent scheme, Liberty Mutual did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

175. As a result of the defendants' misrepresentations, Liberty Mutual paid hundreds of thousands of dollars to the defendants.

176. Liberty Mutual would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the DME, medications, and services billed and if the defendants had not made false representations regarding their eligibility for payment under the Michigan No-Fault Act.

## XI.   MAIL FRAUD RACKETEERING ACTIVITY

177.   As alleged above, the DME, medications, and services billed by the defendants were not prescribed, were not provided, were not medically necessary, were unlawful, and were fraudulently billed.

178.   The objective of the scheme to defraud Liberty Mutual, which occurred throughout the period noted in Exhibits 1 through 3, was to collect No-Fault benefits to which the defendants were not entitled because the DME, medications, and other services billed were not prescribed, were not provided, were not necessary, were not lawfully issued or dispensed, and were billed at excessive and unreasonable amounts.

179.   This objective necessarily required the submission of bills for payment to Liberty Mutual.

180.   The defendants created, prepared, and submitted false medical documentation and placed in a post office and/or authorized depository for mail matter things to be sent and delivered by the United States Postal Service.

181.   All documents, medical records, prescriptions, notes, reports, bills, medical diagnoses, letters, correspondence, and requests for payment in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

182.   Every automobile insurance claim detailed herein involved at least one (1) use of the U.S. Mail, including the mailing of, among other things, the notice of claim and insurance payments.

183.   It was foreseeable to the defendants that submitting bills and medical records to Liberty Mutual would trigger mailings in furtherance of the scheme to defraud alleged herein, including actual payment of fraudulent bills via checks mailed by Liberty Mutual.

184.   Every payment at issue in this Complaint where Liberty Mutual was induced to rely on the defendants' false medical records and bills was tendered via a check mailed by Liberty Mutual using the U.S. Mail.

185.   The fraudulent medical billing scheme detailed herein generated numerous mailings.

186.   A chart highlighting representative examples of mail fraud events by the defendants is annexed hereto at Exhibit 3.

187.   As detailed herein, the defendants also submitted, caused to be submitted, or knew medical documentation and claims for payment would be submitted to Liberty Mutual via the U.S. Mail related to each exemplar patient discussed in this Complaint.

188.   It was within the ordinary course of business for the defendants to submit claims for No-Fault payment to insurance carriers like Liberty Mutual through the U.S. Mail.

189.   Moreover, the business of billing for DME, medications, and other services by each of the defendants at issue herein is regularly conducted by fraudulently seeking payment to which each defendant is not entitled through the use of fraudulent communications sent via the U.S. Mail.

190.   In other words, discrete (claim- and patient-specific) instances of mail fraud are a regular way of doing business for each of the defendants.

191.   The defendants continue to submit claims for payment to Liberty Mutual and, in some instances, continue to commence litigation against Liberty Mutual seeking to collect on unpaid claims.

192.   Thus, the defendants' commission of mail fraud continues.

193.   As all of the defendants named herein agreed that they would use (and, in fact, did use) the mails in furtherance of their scheme to defraud Liberty Mutual by seeking payment for DME, medications, and other services that are not compensable under the Michigan No-Fault Act, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

194. Liberty Mutual reasonably relied on the submissions it received from the defendants, including the representative submissions set out in Exhibits 1 through 3 annexed hereto and identified in the exemplar patients above.

195. As the defendants agreed to pursue the same criminal objective (namely, mail fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Liberty Mutual's damages.

## XII.  **DAMAGES**

196. The fraudulent conduct by the defendants injured Liberty Mutual in its business and property by reason of the aforesaid violations of law.

197. Liberty Mutual's claim for compensatory damages includes payments made by Liberty Mutual directly to Quick Care and Advanced Recovery (for the benefit and receipt of all of the defendants) in reliance upon and as a result of the defendants' false representations regarding the fact, lawfulness, and necessity of the DME, medications, and services for which they directly billed Liberty Mutual.

198. Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation, and Liberty Mutual's damages continue to accrue, Liberty Mutual has been induced to pay hundreds of thousands of dollars to and for the benefit of the defendants.

199.   Liberty Mutual's damages seek monies paid directly to the defendants or on their behalf by Liberty Mutual, and the damages are not derivative of an injury to any other person or entity.  The patients at issue in this Complaint were used as pawns by the defendants and have been victimized by the defendants.  However, the actual target of the defendants' scheme—and the sole party who received fraudulent mailings as itemized in the exemplar patients above and in Exhibits 1 through 3—is Liberty Mutual.  Liberty Mutual alone paid the damages at issue herein.  Thus, injury to Liberty Mutual was the intended, direct, and actual result of the defendants' scheme to defraud.  Injury to Liberty Mutual was also the reasonably probable consequence of the defendants' actions, as it was in the ordinary course of the defendants' business to collect insurance proceeds.

200.   The defendants' fraudulent conduct discussed above caused Liberty Mutual to incur damages by paying claims that otherwise would not have been paid but for the defendants' misrepresentations and improper conduct (as set out in the preceding sections).  Liberty Mutual was the target of the defendants' conduct and bills, and Liberty Mutual's damages are directly related to and a consequence of the defendants' actions discussed herein.

201.   Liberty Mutual also seeks damages, in an amount to be determined at trial, related to the cost of claims handling/adjustment for claims mailed by the

defendants, which includes the cost of investigation to uncover the fraudulent nature of the claims submitted by the defendants.

202.   Liberty Mutual investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

## XIII.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Quick Care Enterprise)
### Against Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones

203.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

204.   Quick Care constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

205.   In connection with the claims identified in the within Complaint, defendants Advanced Recovery, Schwarzrock, and Jones ("Count I defendants") intentionally caused to be prepared and mailed false medical documentation by Quick Care, or knew that such false medical documentation would be mailed in the ordinary course of Quick Care's business, or should have reasonably foreseen that the mailing of such false medical documentation by Quick Care would occur, in furtherance of the Count I defendants' scheme to defraud.

206.   The Count I defendants knew that two (2) or more mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings identified in the chart annexed hereto at Exhibit 3.

207.   As documented above, the Count I defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for DME, medications, and services that were billed by Quick Care, which they knew would be billed by Quick Care, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

208.   Schwarzrock and Jones owned, operated, and conducted Quick Care and were responsible for all actions taken by Quick Care and its representatives.

209.   Advanced Recovery arranged for physicians to write prescriptions for products billed by Quick Care and used its prescription forms to forge physicians' signatures on phony orders for DME, medications, and services, thereby allowing Quick Care to bill Liberty Mutual for medically unnecessary DME, medications, and services.

210.   The Count I defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of medical necessity and permitted Quick Care to continue billing for unlawful and medically unnecessary DME, medications, and services.

211.  As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Quick Care for the benefit of the Count I defendants that would not otherwise have been paid.

212.  The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

213.  By virtue of the Count I defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Quick Care Enterprise)
### Against Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones

214.  Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

215.  Defendants Advanced Recovery, Schwarzrock, and Jones ("Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Quick Care.

216.   The Count II defendants each agreed to further, facilitate, support, and operate the Quick Care enterprise.

217.   As such, the Count II defendants conspired to violate 18 U.S.C. § 1962(c).

218.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Quick Care even though Quick Care was not eligible to collect such payments by virtue of its unlawful conduct.

219.   The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim documents and medical record documents containing material misrepresentations.

220.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count II defendants' unlawful conduct described herein.

221.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in

concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Advanced Recovery Enterprise)
### Against Quick Care Medical Devices, LLC, Nick Schwarzrock, and Douglas Jones

222.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

223.   Advanced Recovery constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

224.   In connection with the claims identified in the within Complaint, defendants Quick Care, Schwarzrock, and Jones ("Count III defendants") intentionally caused to be prepared and mailed false medical documentation by Advanced Recovery or knew that such false medical documentation would be mailed in the ordinary course of Advanced Recovery's business, or should have reasonably foreseen that the mailing of such false medical documentation by Advanced Recovery would occur, in furtherance of the Count III defendants' scheme to defraud.

225.   The Count III defendants knew that two (2) or more mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings identified in the chart annexed hereto at Exhibit 3.

226.   As documented above, the Count III defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for DME, medications, and services that they knew would be billed by Advanced Recovery, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

227.   Schwarzrock and Jones owned, operated, and conducted Advanced Recovery and were responsible for all actions taken by Advanced Recovery and its representatives.

228.   Quick Care provided Advanced Recovery with DME and medications that were used to generate charges to Liberty Mutual billed by Advanced Recovery.

229.   The Count III defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of medical necessity and permitted Advanced Recovery to continue billing for unlawful and medically unnecessary DME, medications, and services.

230.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Advanced Recovery for the benefit of the Count III defendants that would not otherwise have been paid.

231.   The Count III defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

232.   By virtue of the Count III defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**<u>COUNT IV</u>**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Advanced Recovery Enterprise)**
**Against Quick Care Medical Devices, LLC, Nick Schwarzrock, and Douglas Jones**

233.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

234.   Defendants Quick Care, Schwarzrock, and Jones ("Count IV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Advanced Recovery.

235.   The Count IV defendants each agreed to further, facilitate, support, and operate the Advanced Recovery enterprise.

236.   As such, the Count IV defendants conspired to violate 18 U.S.C. § 1962(c).

237.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Advanced Recovery even though Advanced Recovery was not eligible to collect such payments by virtue of its unlawful conduct.

238.   The Count IV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation and submission to Liberty Mutual of insurance claim documents and medical record documents containing material misrepresentations.

239.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count IV defendants' unlawful conduct described herein.

240.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three times the damages sustained by reason of the claims submitted by or on behalf of the Count IV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT V**
**COMMON LAW FRAUD**
**Against All Defendants**

241.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

242.   The scheme to defraud perpetrated by Quick Care, Advanced Recovery, Schwarzrock, and Jones ("Count V defendants") was dependent upon a

succession of material misrepresentations of fact that the defendants were entitled to collect benefits pursuant to applicable provisions of the Michigan No-Fault Act.

243.    The misrepresentations of fact made by the Count V defendants include those material misrepresentations set out in section X.A, *supra*.

244.    The Count V defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

245.    The misrepresentations were intentionally made by the Count V defendants in furtherance of their scheme to defraud Liberty Mutual by submitting, causing to be submitted, or knowing that non-compensable claims for payment pursuant to applicable provisions of the Michigan No-Fault Act would be submitted to Liberty Mutual.

246.    The Count V defendants' misrepresentations were known to be false and were made for the purpose of inducing Liberty Mutual to make payments for claims that are not compensable under Michigan law.

247.    Liberty Mutual reasonably relied upon such material misrepresentations to its detriment in paying numerous non-meritorious bills for alleged medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

248.   As a direct and proximate result of the defendants' fraudulent representations and acts, Liberty Mutual has been damaged in its business and property as previously described herein.

**COUNT VI**
**CIVIL CONSPIRACY**
**Against All Defendants**

249.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

250.   Defendants Quick Care, Advanced Recovery, Schwarzrock, and Jones ("Count VI defendants") combined and acted in concert to accomplish the unlawful purpose of defrauding Liberty Mutual by submitting claims for payment pursuant to applicable provisions of the Michigan No-Fault Act to which they were not entitled because (1) the defendants did not actually provide the DME, medications, and services for which claims were submitted, (2) the defendants did not provide reasonably necessary DME, medications, and services, (3) the defendants did not lawfully provide DME, medications, and services, and (4) the defendants charged excessive amounts.

251.   The Count VI defendants worked together to achieve an unlawful purpose (namely, defrauding Liberty Mutual for personal gain).

252.   This purpose was known to all of the Count VI defendants and intentionally pursued.

50

253.   Despite knowing that the defendants were not entitled to payment pursuant to applicable provisions of the Michigan No-Fault Act because they billed for DME, medications, and services that were not actually provided, because they issued DME, medications, and services unlawfully, because they billed for medically unnecessary DME, medications, and services, and because they charged unreasonable amounts, the Count VI defendants nonetheless submitted, caused to be submitted, or knew that claims would be submitted (with accompanying false medical documentation) to Liberty Mutual seeking payment.

254.   As a result of the false medical documentation submitted by the defendants, Liberty Mutual paid certain of the claims submitted.

255.   All of the Count VI defendants directly benefited from the payments made to Quick Care and Advanced Recovery.

256.   All of the Count VI defendants actively and intentionally partook in a scheme to defraud Liberty Mutual and also encouraged and aided other Count VI defendants in the commission of acts done for the benefit of all Count VI defendants and to the unjustified detriment of Liberty Mutual.

257.   Accordingly, all of the Count VI defendants are equally liable for the fraud perpetrated on Liberty Mutual pursuant to their conspiracy.

**COUNT VII**
**PAYMENT UNDER MISTAKE OF FACT**
**Against Quick Care Medical Devices, LLC and Advanced Recovery**
**Specialists LLC**

258.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 above as if fully set forth herein.

259.   Liberty Mutual paid the amounts described herein under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud Liberty Mutual by misrepresenting the delivery, lawfulness, and necessity of DME, medications, and services billed by Quick Care and Advanced Recovery ("Count VII defendants").

260.   Liberty Mutual sustained damages by paying under a mistake of fact the claims submitted by the Count VII defendants, which misrepresented the delivery, reasonableness, necessity, and lawfulness of the DME, medications, and services allegedly provided.

261.   The Count VII defendants, individually and jointly, would be unjustly enriched if permitted to retain the payments made to them by Liberty Mutual under a mistake of fact.

262.   Liberty Mutual is entitled to restitution from each of the Count VII defendants, individually and jointly, for all monies paid to and/or received by them from Liberty Mutual.

263.   The Count VII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

**COUNT VIII**
**UNJUST ENRICHMENT**
**Against All Defendants**

264.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

265.   Defendants Quick Care, Advanced Recovery, Schwarzrock, and Jones ("Count VIII defendants") submitted, caused to be submitted, or benefited from claims submitted to Liberty Mutual that caused Liberty Mutual to pay money, in reasonable belief that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations.

266.   Liberty Mutual's payments constitute a benefit which the Count VIII defendants aggressively sought and voluntarily accepted.

267.   The Count VIII defendants wrongfully obtained or benefited from payments from Liberty Mutual through the fraudulent scheme detailed herein.

268.   The Count VIII defendants have been unjustly enriched by receipt of and benefit from these wrongfully obtained payments from Liberty Mutual.

269.   The Count VIII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT IX
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

270.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 202 set forth above as if fully set forth herein.

271.   Defendants Quick Care, Advanced Recovery, Schwarzrock, and Jones ("Count IX defendants") routinely billed for unnecessary and unlawful DME, medications, and services with respect to the patients at issue in this Complaint.

272.   The Count IX defendants also billed for DME, medications, and services that were never provided.

273.   Pursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for lawful, reasonable, and necessary medical expenses arising out of a motor vehicle accident.   Mich. Comp. Laws §§ 500.3105, 500.3107, and 500.3157(1).

274.   The lack of reasonableness and necessity are defenses to an insurer's obligation to pay No-Fault benefits arising out of a motor vehicle accident.   Mich. Comp. Laws § 500.3107.

275.   Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

54

276.   The Count IX defendants continue to submit claims under applicable provisions of the Michigan No-Fault Act for unnecessary and unlawfully provided DME, medications, and services to Liberty Mutual, and other claims remain pending with Liberty Mutual.

277.   The Count IX defendants will continue to submit claims under applicable provisions of the Michigan No-Fault Act absent a declaration by this Court that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by any of the Count IX defendants for any or all of the reasons set out in the within Complaint.

278.   Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants billed for unnecessary and unlawful DME, medications, and services that are not compensable under applicable provisions of the Michigan No-Fault Act.

279.   Liberty Mutual also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants were engaged in a fraudulent scheme whereby they billed for unnecessary and unlawfully issued DME, medications, and services, and submitted unreasonable charges for the same to Liberty Mutual at all relevant times.

280.   As such, the Count IX defendants have no standing to submit, pursue, or receive benefits or any other payment from Liberty Mutual, and Liberty Mutual

requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants cannot seek payment from Liberty Mutual for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the conduct detailed in the within Complaint.

281.   Liberty Mutual further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count IX defendants cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the conduct detailed in the within Complaint.

## XIV.  DEMAND FOR RELIEF

WHEREFORE, plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, American Economy Insurance Company, Safeco Insurance Company of Illinois, and LM General Insurance Company respectfully pray that judgment enter in their favor as follows:

## COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Quick Care Enterprise)
### Against Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Quick Care Enterprise)
### Against Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
**(Advanced Recovery Enterprise)**
**Against Quick Care Medical Devices, LLC, Nick Schwarzrock, and Douglas Jones**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATION OF 18 U.S.C. § 1962(d)
**(Advanced Recovery Enterprise)**
**Against Quick Care Medical Devices, LLC, Nick Schwarzrock, and Douglas Jones**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT V
## COMMON LAW FRAUD
### Against All Defendants

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT VI
## CIVIL CONSPIRACY
### Against All Defendants

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' illegal conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT VII
## PAYMENT UNDER MISTAKE OF FACT
### Against Quick Care Medical Devices, LLC and Advanced Recovery
### Specialists LLC

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT VIII
## UNJUST ENRICHMENT
### Against All Defendants

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)    GRANT all other relief this Court deems just.

## COUNT IX
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

(a)    DECLARE that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by defendants Quick Care Medical Devices, LLC, Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones, jointly and severally, for any or all of the reasons set out in the within Complaint;

(b)    DECLARE that Quick Care Medical Devices, LLC, Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones, jointly and severally, cannot seek payment from Liberty Mutual pursuant to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the conduct detailed in the within Complaint;

(c)    DECLARE that Quick Care Medical Devices, LLC, Advanced Recovery Specialists LLC, Nick Schwarzrock, and Douglas Jones, jointly and

severally, cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the conduct detailed in the within Complaint; and

(d)    GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

## XV.    <u>DEMAND FOR JURY TRIAL</u>

The plaintiffs hereby demand a trial by jury on all claims.

Respectfully submitted,

KTM

*/s/ Andrew H. DeNinno*

_____
Nathan A. Tilden (P76969)
ntilden@ktmpc.com
Andrew H. DeNinno
adeninno@ktmpc.com
Brian M. Epstein
bepstein@ktmpc.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Dated:  October 16, 2023          *Attorneys for Plaintiffs*